Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff David Erdely and the Alleged Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ERDELY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CLICKATELL, INC., a Delaware corporation<br><br>Defendant. | Case No. 3:17-cv-01104<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.　Plaintiff David Erdely ("Erdely" or "Plaintiff") brings this Class Action Complaint against Defendant Clickatell, Inc. ("Clickatell" or "Defendant") to stop Defendant's practice of making text message calls to cellular telephones after any consent has been expressly revoked and to obtain redress for all persons injured by its conduct. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

# PARTIES

2. Plaintiff Erdely is a natural person and citizen of the State of New Jersey. He resides in Union County, New Jersey.

3. Defendant Clickatell, Inc. is a corporation incorporated and existing under the laws of the State of Delaware whose primary place of business and corporate headquarters is located at 900 Island Drive, Suite 202, Redwood City, California 94065. Clickatell does business throughout the United States, including in the State of California and this District.

# JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA"), a federal statute.

5. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is registered to do business in the State of California, regularly conducts business in the State of California and in this District, has its principal place of business in this District, its registered agent for service is located in this District, and a substantial part of the events giving rise to the claims asserted here occurred in this District.

# COMMON ALLEGATIONS OF FACT

**A.  Bulk SMS Marketing**

6. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk advertisements cheaply.

7. Bulk text messaging, or SMS marketing, has emerged as a direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the

device.

8.     When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.     Defendant Transmits Text Messages to Consumers Who Do Not Want Them**

9.     Clickatell is a mobile messaging company that purports to help businesses engage with their customers via SMS or text messaging services.

10.    Clickatell has created a platform, which is a fully scalable communication enabler that allows businesses to SMS-enable any application, website or system.

11.    The Clickatell platform has the capacity to send and receive text message calls. Such text message calls can be sent to any cell phone number, regardless of whether the recipient is a user of the platform.

12.    Defendant Clickatell sends text messages from "short code" 64085. A short code is akin to a telephone number for text messages.

13.    In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system. Specifically, the hardware and software used/created by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

14.    Defendant made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

15.    Worse yet, Defendant sends SMS text messages to cellular subscribers who have

expressly "opted-out" or requested not to receive text messages by responding "STOP" or with similar commands. Defendant was required to honor each STOP request as a termination of any prior consent, but failed to do so. Accordingly, any SMS text message (other than a final, one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express STOP or similar request was sent without prior express consent in violation of the TCPA.

16. To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

17. The FCC has made clear that companies must provide an opt-out mechanism in their text messages and that—at most—a single text may be sent after the consumer exercises his/her right to opt out confirming the opt out. *See In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.,* CG Docket No. 20–278 (Nov. 29, 2012) ("*SoundBite Ruling* "); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems."); *see also Munro v. King Broad. Co*., No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013) ("[T]he weight of authority suggests that consent may be revoked under the TCPA and that if messages continue after consent is revoked, those messages violate the TCPA.") (unpublished decision) (collecting cases).

18. Indeed, the MMA's October 2012 U.S. Consumer Best Practices for Messaging echoes this standard by stating, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and messaging. . . When sent,

these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he content provider must record and store all opt-out transactions."

19. CTIA[1] similarly advises that "[s]hortcode programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT . . . and, if the user is subscribed, by opting the user out of the program." Further, "[r]ecurring programs must promote opt-out instructions at regular intervals in content or service messages, at least once per month," and "[u]sers must be able to opt out at any time." *See* CTIA Compliance Assurance Solution Mobile Commerce Compliance Handbook, Version 1.2, effective August 1, 2013.

20. The Ninth Circuit agrees that consent can be revoked. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ("[W]e agree that the TCPA permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems...Revocation of consent must be clearly made and express a desire not to be called or texted.")

21. Again, Defendant simply ignores such legal authorities. Instead, Defendant fails to honor requests by consumers to opt-out or unsubscribe to the SMS text messages.

22. Despite receiving an express stop request from Plaintiff and other cellular subscribers, Defendant Clickatell continues to send automated text messages to these subscribers.

23. Defendant knows, or acts in conscious disregard of the fact, that its SMS text messages to these cellular subscribers are unauthorized. Reply message STOP requests are, by design, sent to Clickatell's short code, 640-85, thereby directly informing Defendant that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs and annoyance of receiving these unsolicited and unauthorized text messages.

**D.   Plaintiff's Experience with Defendant**

---

[1] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

-5-

24.     Starting on November 17, 2016, Plaintiff Erdely received multiple unsolicited text messages from 640-85, Defendant Clickatell's short code, to his personal cell phone, purporting to solicit Plaintiff to purchase telecommunication services for calls to Cuba.

25.     When Erdely would receive the text message, his cell phone would ring, indicating that a text call was being received.

26.     The messages were text messages from 640-85 and all were soliciting Plaintiff to purchase phone minutes for calls to Cuba. The November 28, 2017 text stated:

> "Llama a CUBA 31min/ $15! Habla mas con tu familia a una tarifa mas economica! Solo por POCO TIEMP! https://goo.gl/VY1hgL Llamanos 1-855-328-2012 STOP=ENDSMS"



27.     On November 28, 2016, Plaintiff replied to 640-85, Defendant's short code, with an opt-out requesting saying both "STOP" and "Endsms," requiring Defendant to cease texting him.

28.     Defendant's system accepted the opt-out request, and it responded back with a confirmation of the opt-out shortly after, stating, "This message confirms you have discontinued Clickatell Alerts and you will no longer receive messages. For help call 1-800-557-9158."

29.     However, and despite Plaintiff's opt-out request and confirmation that he had been discontinued from Clickatell Alerts, Plaintiff received additional text messages from Defendant

CLASS ACTION COMPLAINT
-6-

1   starting on December 7, 2016 and continuing through the present.

2          30.     All messages received to date are attached as Exhibit A. Screenshots of some of

3   the messages received after opting-out are below:





31. Plaintiff has received at least five (5) subsequent text message advertisements from Defendant despite his opt-out attempts. The sequence is as follows:

- Plaintiff received an initial message on November 17, 2016 at 4:55 PM from short-code 640-85;
- Plaintiff received a second message on November 28, 2016 at 3:45 PM;
- Plaintiff opted-out on November 28, 2016 at 6:28 PM by replying "Endsms" and "STOP";
- Clickatell confirmed Plaintiff is opted-out shortly after the 6:28 PM opt-out request;
- On December 7, 2016 at 10:50 AM, Plaintiff received another text message from short-code 640-85;
- Plaintiff opted-out again by replying "Stop" shortly thereafter;
- Clickatell again confirmed that Plaintiff is opted-out shortly after the "Stop"

message;

- On December 12, 2017 at 12:26 PM—despite have two "confirmed" opt-outs—Plaintiff received another text message from 640-85;
- On January 25, 2017 at 2:15 PM and February 20, 2017 at 12:41 PM, Plaintiff received additional messages from short-code 640-85;
- On February 20, 2017 at 7:13 PM, Plaintiff replied "Endsms" and "STOP"
- Clickatell—for a third time—confirmed that Plaintiff had been discontinued from Clickatell Alerts;
- On February 28, 2017 at 4:20 PM, Plaintiff received another text message advertisement from short-code 640-85.

*See* Exhibit A.

32.    Simply put, Clickatell's opt-out system is broken. Clickatell confirmed on three separate occasions that Plaintiff had been opted-out, yet the messages continue to the present day.

33.    Responding Stop, in the specific manner Clickatell instructed, is a clear and unequivocal revocation. There is no more efficient way to express one's desire for the text messages to stop. Clickatell has thus plainly violated the TCPA by sending text message advertisements after consumers have opted-out.

34.    By making unauthorized text message calls after consumers have opted-out as alleged herein, Defendant has caused consumers actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such text messages, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages. Furthermore, the text messages interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

35. In the present case, a consumer could be subjected to many unsolicited text messages as Defendant does not provide an operational mechanism to opt-out even though it sends a confirmatory text indicating that no additional texts will be transmitted.

36. To redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

37. On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Replied Stop Class:** All persons in the United States who (1) from the last four years to the present, (2) received on their cellphone at least one text message from Clickatell, (3) replied to the text message with the words STOP, END, CANCEL, Endsms or similar language, and (4) thereafter received at least one additional text message to their same cellphone number other than a message simply confirming their opt out.

39. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following discovery regarding the size and scope of the alleged Class.

40. On information and belief, there are hundreds, if not thousands, of members of the

1  Class such that joinder of all members is impracticable.

2      41.    There are several questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

    a.    whether Defendant's conduct constitutes a violation of the TCPA;

    b.    whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Class;

    c.    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

    d.    whether members of the Replied Stop class revoked their consent by responding STOP, END, CANCEL, Endsms or with similar language; and

    e.    whether Defendant honored the opt-out requests or instead continued to send additional text messages.

42.    The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Class, received spam text message calls from Defendant after opting-out. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Class.

43.    Plaintiff will fairly and adequately represent and protect the interests of the other

members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

44. The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. As the messages continue to be sent in spite of Plaintiff's and the Class Members' STOP requests, injunctive relief is necessary and appropriate to require Defendant to discontinue sending unsolicited and unauthorized spam text messages. Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

45. In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendant. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive

1  litigation necessitated by Defendant's conduct. It would be virtually impossible for members of
2  the Class individually to redress effectively the wrongs done to them. Even if the members of the
3  Class could afford such litigation, the court system could not. Individualized litigation presents a
4  potential for inconsistent or contradictory judgments. Individualized litigation increases the delay
5  and expense to all parties, and to the court system, presented by the complex legal and factual
6  issues of the case. By contrast, the class action device presents far fewer management difficulties,
7  and provides the benefits of single adjudication, economy of scale, and comprehensive
8  supervision by a single court.

9  46. Adequate notice can be given to the members of the Class directly using
10 information maintained in Defendant's records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, *et seq.*)**
**(On Behalf of Plaintiff and the Replied Stop Class)**

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48. Defendant transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Replied Stop Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

49. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

50. These text calls were made *en masse* and without the consent of the Plaintiff and the other members of the Replied Stop Class to receive such wireless spam. Indeed, consent had been revoked by everyone since they each had responded with the common SMS codes to opt-out

of further communications, such as "STOP," "REMOVE," "OPT OUT," "CANCEL" or "Endsms." Such terms clearly express a desire to no longer be called.

51.     The text messages to Plaintiff and the Replied Stop Class were made after any consent had been expressly and clearly revoked by responding with an opt-out request, such as STOP, END, CANCEL, Endsms or similar. This alone violates the TCPA. Plaintiff received no fewer than 5 messages after responding STOP.

52.     Additionally, Defendant's supposed opt out mechanism is not cost free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data.

53.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

54.     Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Defendant was to temporarily place them on hold. The Court should impose injunctive relief prohibiting Defendant from sending such messages until it fixes its system so that it recognizes opt out requests.

55.     As a result of such conduct, Plaintiff and the other members of the Replied Stop Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

56.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class. Defendant received the STOP requests and similar opt out instructions and therefore was on notice that its text messages were being transmitted in violation of the TCPA.

**WHEREFORE**, Plaintiff Erdely, on behalf of himself and the class, prays for the following relief:

CLASS ACTION COMPLAINT
-14-

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Erdely as the representative of the Class and appointing his attorneys' as Class Counsel;

2. An award of actual and statutory damages to be paid into a common fund for the benefit of the Class members;

3. An injunction requiring Defendant to cease all text messaging activity until it fixes its broken opt-out system;

4. An injunction requiring Defendant to honor opt-out requests;

5. An award of reasonable attorneys' fees and costs;

6. A declaration that Defendant's conduct violated the TCPA;

7. A declaration that Defendant's dialing equipment constitutes an automatic telephone dialing system under the TCPA;

8. An award to an appropriate cy pres designee of any monies not distributed from the common fund; and

9. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: March 3, 2017

**DAVID ERDELY**, individually, and on behalf of all others similarly situated,

By: __/s/  Rebecca Davis__
One of Plaintiff's Attorneys

Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

CLASS ACTION COMPLAINT
-15-

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Avenue
Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

**pro hac vice* admission to be filed*